The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

William LESNEY, Defendant–Appellant.

No. 92SA311.

Supreme Court of Colorado,
En Banc.

July 6, 1993.

Rehearing Denied July 26, 1993.

David F. Vela, Colorado State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Denver, for defendant-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., A. William Bonner, Asst. Atty. Gen., Crim. Enforcement Div., Denver, for plaintiff-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

William Lesney brings this direct appeal arguing that the trial court's decision to give him and his co-defendant eight joint peremptory challenges denied him his constitutional right to equal protection of the laws.[1] Because we find that he did not properly preserve the issue of the constitutionality of the statute in question, and we do not find merit in the defendant's other arguments, we affirm the judgment of conviction from the trial court.

I.

On April 26, 1990, Robert Bement, his wife, Harriet Firestone, and her son, Steve Firestone, went to John Fichtner's residence to recover some property and equipment that Bement had stored there.[2] Fichtner was not on the property, so Bement and the Firestones began loading the property on a truck. Fichtner returned, accompanied by the defendant, William Lesney. Fichtner, axe handle in hand, told Bement to get off the property and to leave everything alone. Bement refused to leave because he feared Fichtner would steal the property and sell it. Fichtner, on the other hand, had only days before received an eviction notice and did not want to be suspected of stealing the equipment. An altercation ensued. Fichtner struck Bement several times with the axe handle, and Lesney struck Bement in the head with the butt of a shotgun. Lesney also fired the shotgun at the feet of Steve Firestone and shot out one of the tires of Bement's truck. As Bement and the Firestones drove off, one more shotgun blast was fired in the direction of the retreating truck, missing the truck and its occupants.

After a ten-day trial, a jury convicted Fichtner and Lesney of felony menacing and third degree assault.[3] The defendant was sentenced to four years' imprisonment in the Department of Corrections for the

---

1. We took this appeal directly from the district court because, prior to July 1, 1992, the court of appeals did not have jurisdiction to hear cases in which the constitutionality of a statute was in question. *Compare* § 13-4-102(1)(b), 6A C.R.S. (1987) *with* § 13-4-102(1)(b), 6A C.R.S. (1992 Supp.).

2. The record, however, indicates that there was some dispute over the ownership of the equipment.

3. § 18-3-206, 8B C.R.S. (1986) and § 18-3-204, 8B C.R.S. (1986).

On appeal, Fichtner's conviction was reversed by the court of appeals, *People v. Fichtner*, No. 91CA0246 (Colo.App. Dec. 17, 1992) (not selected for official publication), *cert. pending*, 93SC127 (Colo.1993), because of a failure to instruct the jury on the definition of "serious bodily injury."

menacing charge, and a concurrent one-year sentence for the assault conviction.

## II.

### A.

The defendant first challenges the constitutionality of sections 16–10–104 and –105, 8A C.R.S. (1986). He argues that a criminal defendant tried jointly with one or more other defendants is denied the constitutional guarantees of equal protection of the laws and due process because each defendant is not permitted as many peremptory challenges as he or she would have if he or she were tried separately.[4] § 16–10–104(1). Having carefully examined the record, in particular the arguments of counsel concerning the number of peremptory challenges the defendants should be given, we can find no indication that the constitutionality of the statutes was raised as an issue at the trial level. The only argument made by trial counsel was based on statutory construction and that argument is not asserted on appeal. An issue is not properly preserved for appellate review if, as here, it is not presented to the trial court and is raised for the first time on appeal. *Colgan v. Department of Revenue*, 623 P.2d 871, 874 (Colo. 1981); *Manka v. Martin*, 200 Colo. 260, 264, 614 P.2d 875, 877 (1980). We decline to address the constitutionality of the statutes.

### B.

The defendant next contends that he was denied his right to due process when the trial court refused to sever his trial from that of his co-defendant. A criminal defendant is entitled to severance as a matter of right if there is evidence which is admissible against one but not all of the parties and that evidence is prejudicial to the defendant against whom the evidence is not admissible. § 16–7–101, 8A C.R.S.

(1986); Crim.P. 14. The prosecution's theory of the case was that the crimes committed here were joint ones, and the defense did not argue that mandatory severance was at issue.

A trial court has the discretion to order severance in other cases. A court should be guided in such a decision by the following considerations: (1) whether the number of defendants or the complexity of the evidence is such that the jury will confuse the evidence and the law applicable to each defendant; (2) whether, despite cautionary instructions, the evidence admissible against one defendant will be improperly considered against the other defendant(s); and (3) whether the defenses asserted by each defendant are antagonistic. *People v. Warren*, 196 Colo. 75, 77–78, 582 P.2d 663, 665 (1978); *Peltz v. People*, 728 P.2d 1271, 1275 (Colo.1986); *People v. Durre*, 713 P.2d 1344, 1347 (Colo.App. 1985). Such a decision is within the sound discretion of the trial court. *Id.*

Here, the defendant's reason for requesting a severance was to be able to exercise additional peremptory challenges. There were only two defendants, and the evidence regarding the actual assault and menacing was not complex. There was no evidence that could have been improperly considered against the defendant that was admissible against Fichtner. The defenses asserted by the two defendants, while not necessarily complementary, were not antagonistic. We see no abuse of discretion here.

## III.

The defendant also raises two issues regarding evidentiary rulings at trial. First, the defendant contends that the trial court erred when it ruled that questions to a police detective regarding the detective's personal bias against the defendant would open the door to testimony regarding the

---

**4.** In a non-capital felony case, a single defendant is permitted five peremptory challenges, § 16–10–104(1), plus one peremptory challenge for each alternate juror, § 16–10–105. In a joint trial, this number of peremptory challenges is allowed to each side (*i.e.*, the prosecution and the defense). Further, for each additional defendant, each side is entitled to two more peremptory challenges, up to a total of fifteen peremptory challenges. § 16–10–104(1). In this case, both sides were permitted eight peremptory challenges (there was one alternate juror), but the two defendants could not agree on all of the defense challenges. If each defendant had been tried separately, each defendant would have been entitled to six peremptory challenges.

detective's unproven suspicions that the defendant was responsible for killing a person in an unrelated and uncharged incident.

In January 1990, Joe Sicilia was shot to death. The defendant was hunting with Sicilia when Sicilia was shot and both men apparently were intoxicated at the time of Sicilia's death.[5] The death was deemed to be accidental, although the defendant had a memory loss regarding the events immediately prior to and following the shooting. The police detective involved in the present case was also involved in the Sicilia case, and he suspected the defendant of foul play in the former case.

At trial, the defendant apparently wanted to introduce certain hearsay statements made by the detective to show that the detective was biased against him, but wanted to exclude any of the details of Sicilia's death. The trial court ruled that, if the defendant wanted to introduce such evidence, he would be opening the door for the detective to explain why he was biased. Otherwise, the trial court reasoned, the jury would be left with an inference that the officer was acting improperly with regard to the defendant.

 As long as the restriction is not so severe as to constitute a denial of that right, limiting the scope and extent of cross-examination is a matter usually within the sound discretion of the trial court. *People v. Rafealli,* 647 P.2d 230, 234 (Colo. 1982); *People v. Trujillo,* 749 P.2d 441, 442 (Colo.App.1987); *Merritt v. People,* 842 P.2d 162, 166 (Colo.1992). A witness should be allowed to explain or rebut any adverse inferences resulting from cross-examination in order to place matters in context so that the jury can evaluate the existence and significance of a witness's alleged bias. *See People v. Haymaker,* 716 P.2d 110, 113 (Colo.1986); *People v. Tenorio,* 197 Colo. 137, 145–46, 590 P.2d 952, 958 (1979). There was no error here.

 Finally, the defendant asserts that he was denied his right to testify when the trial court ruled that his co-defendant could cross-examine him as to his prior felony convictions, even though the prosecution failed to disclose those convictions.[6] The defendant argues that, because the prosecution did not disclose the convictions, he did not have an opportunity to challenge the validity of those convictions. This argument lacks merit. First of all, the defendant did not request a continuance or even seek to challenge the constitutionality of any of his prior convictions. In addition, the presentence investigation report indicates that the defendant's most recent conviction is over ten years old. Pursuant to section 16–5–402, 8A C.R.S. (1986), felony convictions in this state, the United States, or any other state must be challenged within three years. *See People v. Fagerholm,* 768 P.2d 689 (Colo.1989) (establishing five-year grace period from July 1, 1984 for convictions prior to effective date of § 16–5–402). Finally, the Crim.P. 16 sanction for nondisclosure applies only against the prosecution, not against a co-defendant. Crim.P. 16 recognizes that a defendant may be in danger of having his or her constitutional right to testify hampered by the prosecution's failure to disclose prior convictions. A co-defendant in a joint trial should be able to use prior felony convictions to impeach the testimony of a defendant who chooses to testify (and perhaps attempts to portray the co-defendant as the more, or solely, culpable party). Such a co-defendant may have his or her right to a complete defense impaired by not being allowed to impeach such a testifying defendant's credibility. There was no reversible error by the trial court.

For the foregoing reasons, we affirm the defendant's convictions for felony menacing and third degree assault.

---

**5.** The defendant admitted generally to drinking several cans of beer per day, as well as taking several prescribed medications: Valium (diazepam—an anxiolytic), Soma (carisoprodol—a muscle relaxant), and Lortab (hydrocodone and acetaminophen—a pain reliever).

**6.** The trial court ruled that the prosecution could not use the defendant's prior felony convictions to impeach his credibility because of this violation of Crim.P. 16.